UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X
                                                         :

PERFECT PEARL CO., INC. d/b/a MAJESTIC PEARL    :
CO.,                                                    :

                                  :          10 Civ. 3998 (PAE)

                         Plaintiff,        :

                 -v-                :          <u>OPINION & ORDER</u>

                                    :

MAJESTIC PEARL & STONE, INC.,                :

                                    :

                       Defendant.       :

                                    :

------------------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

      Plaintiff Perfect Pearl Co. ("Perfect") brings claims of unfair competition and false advertising against defendant Majestic Pearl & Stone, Inc. ("Majestic"), under the Lanham Act, 15 U.S.C. § 1051 *et seq.*, and New York common law. It alleges that Majestic has infringed on its exclusive right to use the trademarks MAJESTIC and MAJESTIC PEARL (the "MAJESTIC marks" or the "marks"). Majestic has counterclaimed, asserting that it is the rightful owner of the MAJESTIC marks and that Perfect has infringed on its trademark rights.

      Both parties now move for summary judgment on their respective claims. For the reasons that follow, Perfect's motion is, in substantial part, granted: The Court finds that Perfect, having been the first to use the MAJESTIC marks in the area of pearl jewelry, has the exclusive right to use those marks in connection with pearl jewelry, although not in connection with other products, including pearl beads and loose pearls, which represent the vast majority of Majestic's business. Majestic's motion for summary judgment is denied in its entirety. Perfect also moves to strike that portion of Majestic's reply memorandum of law asserting an affirmative defense of laches. That motion is denied without prejudice as moot.

I.      **Background**[1]

Perfect Pearl is a manufacturer of pearl jewelry sold under the name "Majestic."

Majestic Pearl is a wholesale retailer of pearl beads as well as pearl jewelry, products it also sells

under the name "Majestic."  Historically, both parties have largely been business-to-business

operations:  Rather than selling their products directly to consumers, they have sold to retailers

and designers, who in turn sell them (often rebranded) to consumers.  In recent years, however,

Perfect has begun to sell directly to consumers through the television shopping channel QVC and

its website, www.QVC.com.  This lawsuit ensued when the parties learned of each other's use of

the word "majestic" in connection with marketing and selling pearl jewelry.  Each party argues

that it is entitled to exclusive use of the marks at issue, MAJESTIC and MAJESTIC PEARL, and

that the other must be enjoined from using them.

### A. Perfect's Use of the Marks

Perfect was established in 1955 by brothers Joseph and Albert Spitzer.  Perfect 56.1 ¶ 1.

In 1965, Perfect obtained a certificate of "doing business as" Majestic Pearl Company.[2]  A.

---

[1] The Court's account of the underlying facts is drawn from the parties' Local Rule 56.1 Statements (Dkts. 56, 60, & 87); the Declarations ("Decl.") of: Albert Ben Spitzer, Anthony Lo Cicero, Angela Grogan, Barbara Kraselsky, Barry Edelstein, Donna Bova, Eli Spitzer, and Mark Wachs in Support of Plaintiff's Motion for Summary Judgment (Dkts. 57, 59, & 61–66), in each case, with attendant exhibits; the Reply Affidavit of Holly Pekowsky in Support of Plaintiff's Motion for Summary Judgment (Dkt. 78) ("Pekowsky Reply Aff."), with attendant exhibits; the Affirmation of Panagiota Betty Tufariello in Support of Defendant Majestic Pearl & Stone, Inc.'s Opposition to Plaintiff Perfect Pearl Co., Inc.'s Motion for Summary Judgment (Dkt. 72) ("Tufariello Opposition Aff."), with attendant exhibits; and the Affirmation of Panagiota Betty Tufariello, Esq. in Support of Counterclaim-Plaintiff Majestic Pearl & Stone, Inc.'s Motion for Summary Judgment (Dkt. 53) ("Tufariello Support Aff."), with attendant exhibits, including transcripts of the Deposition of Johnson Wang ("J. Wang Dep.") and the Deposition of Connie Wang ("C. Wang Dep.").

[2] Majestic disputes the facts surrounding Perfect's founding and its registration as "d/b/a/ Majestic Pearl Company."  Majestic notes that the plaintiff in this suit is "Perfect Pearl Co., Inc. d/b/a Majestic Pearl Co.," not "Perfect Pearl Co." and, therefore argues that plaintiff cannot

Spitzer Decl. ¶ 7.  Since then, Perfect has used the name Majestic Pearl Company as a business name.  In January 1993, the company leased a showroom in New York under the name Majestic Pearl Company.  *Id.* Ex. B.  Since at least 1986, company employees have identified themselves to customers as representing "Majestic Pearl."  Perfect 56.1 ¶ 25.  Perfect also uses the name Majestic Pearl on catalogs that it sends to consumers.  *Id.* ¶ 23.

Also in 1965, Perfect began to sell a line of jewelry under the name "majestic."[3]  *Id.* ¶ 2. This line of jewelry bears the MAJESTIC marks on the tags which are affixed to the items, *id.* ¶ 11; Perfect represents that jewelry such as necklaces, bracelets, and earrings have always been sold with hanging tags or on cards that have "Majestic" in stylized lettering on the front, *id.* ¶¶ 13–19.  In support of this claim, Perfect has adduced evidence that on June 21, August 19, and December 14, 1994, Perfect placed orders with the First Card Company for earring cards bearing the MAJESTIC marks.  Edelstein Decl. Ex. A.  The total number of cards ordered in 1994 was 18,000.  *Id.*  Current and former Perfect employees Donna Bova, Angela Grogan, Albert Spitzer, Eli Spitzer, and Mark Wachs, state in their respective declarations that the tags and cards used on the company's jewelry have always looked similar to the ones currently used.  *See* Bova Decl. ¶¶ 5–6; Grogan Decl. ¶¶ 10, 12; A. Spitzer Decl. ¶¶ 11–12; E. Spitzer Decl. ¶¶ 8–9; Wachs Decl. ¶¶

claim to have been founded in 1955.  Majestic also disputes that Perfect registered to do business as Majestic Pearl Co. in 1965, because it was Perfect's founder, Joseph Spitzer, who was named in his individual capacity on the 1965 Business Certificate, not Perfect itself.  *See* A. Spitzer Decl. Ex. A.  Perfect, as an entity, did not register to do business as Majestic Pearl Co. until 1986.  Although the Court understands the distinction which Majestic draws, the resolution of these historical disputes is immaterial to this motion.  Neither party has brought a claim for infringement of a trade name—their claims instead concern trademarks.  And it is clear, as discussed below, that Perfect used the MAJESTIC marks in commerce before Majestic did.  For these reasons, the date of Perfect's founding and the technicalities surrounding its application to do business as Majestic Pearl Co. are beside the point.  Accordingly, the Court does not resolve the issues raised by Majestic relating to Perfect's founding and original business name.

[3] Perfect has never sold loose pearls, and confirmed at argument that it has no plans to do so.

[3]

9–10.  Collectively, these statements cover the period from 1965 to 1996.  Perfect has submitted photos of the current versions of these jewelry tags and cards which are white with MAJESTIC in black letters.  A. Spitzer Decl. Exs. C & D.  There is, however, no direct evidence in the record as to what the tags and cards looked like before 1996.

Perfect sells its jewelry primarily to women's clothing and accessory retailers, although it also sells directly to customers through QVC and its website, www.QVC.com.  Perfect 56.1 ¶ 3; *see also* Majestic 56.1 ¶ IV(D)(1)–(6).  Certain retailers sell Perfect's jewelry through a "private label"—in this situation, the jewelry is not sold with the MAJESTIC marks and is instead sold with the retail store's own logo or mark.  Perfect 56.1 ¶¶ 30–31.  There are, however, a number of retailers who sell Perfect's jewelry with the MAJESTIC marks present on the tags and cards.[4] One such retailer is the chain store Petite Sophisticate.  *Id.* ¶ 32.  Barbara Kraselsky, a buyer for Petite Sophisticate from 1987 to 1992, attested that the store sold Perfect's jewelry and that "[t]he earrings came on MAJESTIC earring cards and the necklaces were featured with MAJESTIC string tags."  Kraselsky Decl. ¶ 6.  "That," she added, "was the way we displayed them to the customers."  *Id.*  Perfect's records show that the Majestic line of jewelry generated more than $1 million in revenue each year between 1988 and 2010.  Perfect 56.1 ¶ 51.  The sales data does not, however, indicate how much of that revenue is attributable to goods sold with the MAJESTIC marks as opposed to those sold under a private label.

Perfect's business model has remained fundamentally the same up to the present.  The

---

[4] The stores which used the MAJESTIC marks when selling Perfect's jewelry before 1996 were: Petite Sophisticate, CFTC Group, Inc., Colony Shop, Inc., Craig's, Decelle, Filene's Basement, Gabriel Brothers, Fashion Shops of Kentucky, Army/Air Force Exchange Service Mercantile Stores Co., Inc., Modecraft Fashions, Navy Exchange Service Committee, Schweser's, Sieferts Plus, Vanity Shop and Stein Mart, Inc., Boscov Dept. Store, Bromberg & Co., De Janeiro Stores, Inc., Norstan Apparel Shops, Inc., and S.P. Duhham & Co.  Perfect 56.1 ¶ 32.

company continues to sell its Majestic line of jewelry with the MAJESTIC marks affixed to it by the necklace tags and earring cards.  The jewelry is still sold to national women's clothing and accessories retailers as well as directly to consumers through QVC.  Accordingly, Perfect's use of the marks before Majestic's entry into the market may fairly be described as limited to (1) selling pearl jewelry; (2) to national clothing and accessories retailers; (3) including tags bearing the MAJESTIC marks; and (4) from a showroom in New York City.

### B.  Majestic's Use of the Marks

Majestic was established in Hong Kong in 1980 by Chu Sing Wang; it began selling jewelry in the United States in 1996.[5]  Majestic 56.1 ¶ I(A).  It is incorporated in New York and maintains an office in Manhattan.  *Id.*  Majestic primarily sells wholesale freshwater pearl beads to bead shops, jewelry manufacturers, and designers.  *Id.* ¶¶ I(P)–(R).  The company also sells pearl jewelry, although this accounts for only a small portion of Majestic's business.  Connie Wang, Majestic's Chief Financial Officer, testified that jewelry accounted for only about 5% of Majestic's overall business.  C. Wang Dep. 40.

Majestic first used the MAJESTIC marks in commerce in 1996 when it began to sell its products in the United States.  Majestic 56.1 ¶ IV(A)(1).  The company uses the marks in various formats.  Majestic's pearl beads are sold to customers in bags that bear the MAJESTIC marks.  J.

---

[5] Perfect contests many of the factual claims alleged in Majestic's 56.1 Statement.  Perfect objects, pursuant to Fed. R. Civ. P. 56(c)(1)(B), on the ground that the statements made therein are supported only by Majestic's Amended Answer, Dkt. 45, which is not admissible evidence, and cannot be relied upon to support a motion for summary judgment.  In light of this objection, Majestic made a very belated motion to file a verified answer to remedy this deficiency (Dkt. 82).  So as to avoid further delay in this case, Perfect did not oppose the motion (Dkt. 92).  Accordingly, the Court granted Majestic's motion as unopposed and a verified answer was later filed (Dkts. 93 & 94).  The facts contained therein were sworn to by Johnson Wang, Vice President of Majestic, based on his personal knowledge and his review of Majestic's records.  Given Wang's verification of the facts, Perfect's objection is moot and the Court accepts Majestic's proffer of material facts.

Wang. Dep. 57.  The marks also appear on a sticker that is used to seal the bags when the pearls are shipped to customers.  C. Wang Dep. 46–47.  Additionally, the MAJESTIC marks appear on the tags affixed to all the jewelry sold by Majestic, as well as on the bags or boxes in which the jewelry is packaged.  J. Wang Dep. 55.

Majestic advertises its products using the MAJESTIC marks in trade publications, at trade shows, and on its website.  Majestic 56.1 ¶ IV(A)(3).  According to Majestic's business records, it has spent $2,324,406.47 on advertising in connection with the MAJESTIC marks since 1996.  Tufariello Support Aff. Exs. 17–25.  A sizable portion of that spending is at the many trade shows which Majestic representatives attend each year, at which the company sells and markets its product to business consumers.  Majestic 56.1 ¶¶ IV(A)(5)–(6).  At these shows, Majestic distributes promotional "giveaways" such as pens and pearl care guides which bear the MAJESTIC marks.  J. Wang Dep. 46–47.

In 2001, Majestic obtained a registration with the Patent and Trademark Office ("PTO") for the trademark MAJESTIC in connection with the sale of pearls.  *See* Section I.C, *infra*.  During the time in which Majestic had a valid registered trademark for MAJESTIC, it designed its promotional materials to include the registration symbol ("®") next to the word "majestic."  After Majestic's registration lapsed in 2008, the company continued to use promotional materials with the ®.  J. Wang Dep. 62–65.  In October 2009, as a result of this litigation, Majestic learned that it no longer had a current registration for the mark and "stopped using [the ®] immediately."  C. Wang Dep. 116.

**C. Prior Registrations of the Marks**

On June 29, 2000, Majestic initiated proceedings in front of the PTO to register MAJESTIC in connection with the sale of freshwater pearls.  Lo Cicero Decl. Ex. A.  Majestic

filed an "actual use" application, indicating that it was currently using the mark it was seeking to register and was not registering it for future use.  *Id.*  On February 28, 2001, the PTO issued a Notice of Publication and demanded that any opposition to the registration be filed by April 13, 2001.  *Id.*  On June 5, 2001, with no opposition having been filed, the registration was granted. *Id.*  That registration was given U.S. Trademark Registration No. 2,457,367.  *Id.*  On March 8, 2008, Majestic's registration of the MAJESTIC mark lapsed following Majestic's failure to file the requisite paperwork demonstrating continued use of the mark.  Majestic 56.1 ¶ II(C)(1)(h).

Majestic has subsequently filed three new applications for the MAJESTIC marks.  On July 8, 2009, Majestic applied to register MAJESTIC in connection with the sale of jewelry and pearls.  Perfect 56.1 ¶ 57.  On August 17, 2010, the PTO issued a Notice of Publication for this mark.  *Id.* ¶ 61.  The application was given serial number 77/776,779.  *Id.* ¶ 57.  On July 13, 2009, Majestic applied to register MAJESTIC for the sale of pearls.  *Id.* ¶ 64.  On September 21, 2010, a Notice of Publication was issued and the application was designated as serial number 77/779,710.  *Id.* ¶¶ 64, 67.  On July 22, 2010, Majestic filed an application for the MAJESTIC mark in connection with wholesale distributorships.  *Id.* ¶ 70.  On December 28, 2010, the PTO issued a Notice of Publication for this mark which was given the serial number 85/090,958.  *Id.* ¶¶ 70, 73.  Perfect has filed objections to all three trademark applications on the ground that they are confusingly similar to Perfect's marks.  *Id.* ¶¶ 62, 68, 74.  Each application has been suspended pending the outcome of this lawsuit.  *Id.* ¶¶ 63, 69, 75.

### D.  Instances of Consumer Confusion

Since 2009, there have been numerous instances of actual confusion in which consumers mistook one company for the other.  The genesis of this confusion was Perfect's decision to being marketing its jewelry on the shopping channel QVC.  *See* Majestic 56.1 ¶¶ IV(D)(1)–(16).

Although the record does not make clear exactly when this occurred, it appears that Perfect at some point ceased displaying its jewelry on QVC for a period of time, and that a number of Perfect's customers set out to find the retailer of the jewelry they had previously seen on QVC, and came upon Majestic, not Perfect. *See id.* Believing Majestic to be the company responsible for the line of "majestic pearl" jewelry shown on QVC, these customers reached out to Majestic to ask how to order Perfect's products. For example, on July 8, 2009, Majestic received an email through its website from a woman located in Michigan asking, "Are you [the] company that sold on QVC? If so, when will you be back on? Your product was wonderful . . . and [I] have not seen them on air for months." *Id.* ¶ IV(D)(4).

An additional instance of confusion occurred when a party to the Filene's Basement bankruptcy litigation contacted Majestic seeking to purchase "Majestic Pearl Co.'s" (meaning, Perfect's) claim in the bankruptcy. Majestic 56.1 ¶ IV(D)(14). It was, however, Perfect, not Majestic which had done business with Filene's Basement and owned a potential claim on the bankruptcy estate.

### E.  The Current Lawsuit

As a result of these instances of actual confusion, the parties first became aware of each other's use of the MAJESTIC marks. On May 14, 2010, following that discovery and following unsuccessful discussions between the two entities to resolve the issue, Perfect filed this lawsuit against Majestic. It alleged infringement of its trademark rights under the Lanham Act. Majestic counterclaimed that it possesses the exclusive right to the MAJESTIC marks and that Perfect is, therefore, liable for infringement.

Perfect raises three claims against Majestic:  Count One alleges unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a). Count Two alleges false advertising, also in

[8]

violation of the Lanham Act, 15 U.S.C. § 1125(a).  Count Three alleges both unfair competition and false advertising under New York common law.

Majestic makes eight counterclaims against Perfect: (1) unfair competition under the Lanham Act, 15 U.S.C. § 1125(a), specifically, false designation of origin in connection with trademark infringement; (2) unfair competition under the Lanham Act, 15 U.S.C. § 1125(a), specifically, confusion, mistake, or deception in connection with trademark infringement; (3) trademark dilution in violation of the Lanham Act, 15 U.S.C. § 1125(c); (4) trademark infringement in violation of New York General Business Law ("N.Y.G.B.L.") § 133 (Use of Name or Address with Intent to Deceive); (5) deceptive business practices under N.Y.G.B.L § 349 (Deceptive Acts and Practices Unlawful); (6) injury to business reputation in violation of N.Y.G.B.L. § 360-1 (Injury to Business Reputation; Dilution); (7) trademark infringement under New York common law; and (8) unjust enrichment.

Perfect moves for summary judgment in favor of its claims, and against each of Majestic's claims and affirmative defenses.  Majestic opposes Perfect's motion; it seeks summary judgment in its favor on its counterclaims.  Each party argues that it possesses an exclusive right to use the MAJESTIC marks and that the other must be enjoined from all future use and is liable for damages based on past use of the marks.  On July 20, 2012, the Court heard oral argument on this motion.

## II.    Applicable Legal Standard

To succeed on a motion for summary judgment, the movant must demonstrate "that there is no genuine dispute as to any material fact."  Fed. R. Civ. P. 56(a).  A court faced with cross-motions for summary judgment "need not grant judgment as a matter of law for one side or the other."  *Lorterdan Props. at Ramapo I, LLC v. Watchtower Bible & Tract Soc'y of N.Y., Inc.*, No.

[9]

11-cv-3656, 2012 U.S. Dist. LEXIS 95693, at *37 (S.D.N.Y. July 9, 2012) (citing *Pfizer, Inc. v. Stryker Corp.*, 348 F. Supp. 2d 131, 140 (S.D.N.Y. 2004)) (internal quotation marks omitted). Each movant bears the burden of demonstrating the absence of a material factual question; in making this determination, the Court must view all facts "in the light most favorable" to the non-movant. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also Holcomb v. Iona Coll.*, 521 F.3d 130, 132 (2d Cir. 2008). In undertaking this analysis, the Court "must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993) (citing *Schwabenbauer v. Bd. of Ed.*, 667 F.2d 305, 313–14 (2d Cir. 1981) (internal quotation marks omitted)).

To defeat a motion for summary judgment, the opponent must show that "the evidence is such that a reasonable jury could find in the non-movant's favor." *Beyer v. Cnty. of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008). In so doing, "the non-moving party must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." *FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010). Finally, only disputes regarding "facts that might determine the outcome of the suit under the governing law" are grounds for a denial of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## III. Discussion

The critical issues in this case are whether Perfect's prior use of the MAJESTIC marks in commerce was sufficient to earn it trademark rights and whether (and if so, to what extent) those rights trump the rights that Majestic later obtained by registering the marks. The Court finds that Perfect used the MAJESTIC marks in commerce before Majestic (in 1996) first used them and

(in 2001) registered them, and that Perfect's prior use in commerce is sufficient to give it a right

to the marks.  The Court next inquires whether Perfect's marks are protectable either through

inherent or acquired distinctiveness.  The Court finds that the MAJESTIC marks are suggestive

and, therefore, inherently distinctive; accordingly, Perfect does not need to demonstrate that the

marks acquired secondary meaning before Majestic's use.  Because the marks are entitled to

protection, Perfect's status as the senior user necessarily entitles it to exclusive use of the marks.

*See La Societe Anonyme des Parfums Le Galion v. Jean Patou, Inc.*, 495 F.2d 1265, 1271 (2d

Cir. 1974).  Finally, the Court examines whether there is a likelihood of confusion.  The Court

finds such a likelihood, but only in the context of the parties' sale of pearl jewelry, not of loose

pearls or pearl beads.

　　　　In sum, the Court concludes that Perfect has a right to exclude Majestic from using the

marks in the narrow area of pearl jewelry (*i.e.,* Majestic may not continue to sell pearl jewelry

with the MAJESTIC marks and must do so using a different mark).  The Court does not,

however, enjoin Majestic from using its trade name or from using the marks on loose pearls or

pearl beads.

### A.  Perfect's and Majestic's Lanham Act Claims of Trademark Infringement and Unfair Competition

　　　　Both parties have brought claims under the Lanham Act, 15 U.S.C. § 1051, *et seq.* [6]

Because these claims implicate common legal and factual issues, the Court addresses these

claims in tandem.  To prevail on a claim of trademark infringement under Section 43(a) of the

---

[6] The relevant section of the Lanham Act is Section 43(a), 15 U.S.C. § 1125, which governs the protection of unregistered trademarks from infringement.  *See, e.g.*, *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 208 (2000).  It is undisputed that Perfect has never owned a registration for its marks.  It is also undisputed that Majestic's registration of the marks has lapsed.  Although prior registrations can serve as prima facie evidence of a party's entitlement to the marks, Majestic can no longer purport to own a registered mark.  *See* 15 U.S.C. § 1057(b).  Therefore, Section 43(a) applies here.

Lanham Act, a "plaintiff must demonstrate that it has a valid mark entitled to protection and that the defendant's use of it is likely to cause confusion." *Time, Inc. v. Petersen Pub. Co.*, 173 F.3d 113, 117 (2d Cir. 1999).

### 1.     Priority of Use

Perfect argues that, although it has never registered its marks with the PTO, it has a common law right to exclusive use of the MAJESTIC marks.  This claim hinges on Perfect's ability to establish priority of use: specifically, that Perfect used the marks in commerce before Majestic entered the market in 1996.  It is well-settled that rights to a mark derive not from a registration or adoption of a mark but from its use.  *See United Drug Co. v. Theodore Rectanus Co.*, 248 U.S. 90, 97 (1918); *see also* J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 19:3 (4th ed. 2012) (hereinafter "McCarthy").  "[T]he user who first appropriates the mark obtains [an] enforceable right to exclude others from using it, as long as the initial appropriation and use are accompanied by an intention to continue exploiting the mark commercially."  *La Societe Anonyme des Parfums*, 495 F.2d at 1271; *see also Dial-A-Mattress Operating Corp. v. Mattress Madness Inc.*, 841 F. Supp. 1339, 1347 (E.D.N.Y. 1994) ("The first user who continuously uses an inherently distinctive mark in the relevant market is the senior user and has priority over any second comers.").  A satisfactory showing of priority gives Perfect a significant advantage in proving that it has an exclusive right to use the MAJESTIC marks going forward.  *See Johanna Farms, Inc. v. Citrus Bowl, Inc.*, 468 F. Supp. 866, 875 (E.D.N.Y. 1978) ("Where claimants dispute the right to use a particular trademark, the general rule is that priority of appropriation and use determines which litigant will prevail in its use.").

In the Court's assessment, there is overwhelming evidence that Perfect used the MAJESTIC marks in commerce before Majestic entered the market in 1996.  Perfect's founder,

Albert Spitzer, has averred that the company began selling jewelry with the MAJESTIC marks as early as 1965.  A. Spitzer Decl. ¶ 7.  Consistent with this, numerous longtime employees have averred that Perfect was selling jewelry with the MAJESTIC marks from the time each joined the company, through to the present day.  *See* Wachs Decl. ¶ 6 (marks in use since 1986); Bova Decl. ¶¶ 3–4 (since 1991); E. Spitzer Decl. ¶ 5 (since 1993); Grogan Decl. ¶¶ 3–4 (since 1993).

        In addition, Perfect has submitted declarations from third parties attesting to Perfect's use of the marks in commerce.  Barbara Kraselsky, a former buyer for the retail chain Petite Sophisticate between 1987 and 1992, attested that she purchased Perfect's jewelry, with the MAJESTIC marks on the tags affixed to it, and that Petite Sophisticate sold the jewelry, with the tags still affixed, during those years.  Kraselsky Decl. ¶¶ 4–8.  Barry Edelstein of the First Card Company, in turn, attested that the First Card Company's records indicate that, in 1994, Perfect placed three orders for display cards (used for earrings) with the MAJESTIC mark on them.  Edelstein Decl. ¶¶ 6–7 & Ex. A.  In 1994, Perfect ordered 18,000 such cards bearing the name MAJESTIC.  *Id.* Ex. A.

        Finally, Perfect has submitted evidence of the revenues that it received from sales of its Majestic line of jewelry dating back to 1988.  E. Spitzer Decl. Ex. E.  Perfect's Majestic division averaged about $2 million in sales each year between 1988 and 1995.[7]  Perfect's primary sales outlets have been retail stores, a number of which sell the jewelry with the MAJESTIC marks present on the tags.  Perfect 56.1 ¶ 32.  Perfect has submitted evidence listing the retail stores that sold its jewelry with the marks before 1996.  These include: CFTC Group, Inc., Colony

---

[7] Spitzer represents that he derived the composite exhibit of Perfect's sales data, Ex. E, from its business records.  Because he is a principal of Perfect and is personally responsible for "overseeing sales," the Court finds  admissible the compilation based on business records which he has authenticated.  *See* E. Spitzer Decl. ¶ 3; Fed. R. Evid. 901(a) ("the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is").

Shop, Inc., Craig's, Decelle, Filene's Basement, Gabriel Brothers, Fashion Shops of Kentucky, Army/Air Force Exchange Service Mercantile Stores Co., Inc., Modecraft Fashions, Navy Exchange Service Committee, Schweser's, Siefert's Plus, Vanity Shop, and Stein Mart, Inc.  E. Spitzer Decl. ¶ 16.  Consistent with this, Perfect's business records reflect that each of these retail stores was a Perfect customer before 1996.  *Id.* Ex. C.

It is true, as counsel to Majestic noted at argument, that Perfect's sales records do not break out how the amount of revenue attributable to sales of jewelry bearing the MAJESTIC mark, as opposed to private label sales.  But such an accounting is not required to show Perfect's prior use of the marks in commerce.  Indeed, a single use of the mark in commerce can be enough as long as that use was "deliberate and continuous."  *Menashe v. V Secret Catalogue, Inc.*, 409 F. Supp. 2d 412, 424 (S.D.N.Y. 2006) (citing *La Societe Anonyme*, 495 F.2d at 1272).  Here, the evidence that Perfect has come forward with is more than enough to establish that its customers sold the jewelry with the marks.

The evidence is thus compelling that, before 1996, Perfect was selling, in commerce and from a New York showroom, pearl jewelry with tags bearing the MAJESTIC marks, and that it is the senior user of those marks.  The Court, therefore, turns to the question whether Perfect's marks are protectable, so as to entitle Perfect to preclude others from using them.

### 2.      Protectability of the Marks

#### a.   *Classifying the Marks*

To prevail on a Lanham Act claim, a plaintiff must prove that it has a mark which is entitled to protection.  *Gruner + Jahr USA Pub. v. Meredith Corp.*, 991 F.2d 1072, 1075 (2d Cir. 1993).  The protectability of a mark depends, in large measure, on how distinctive it is.  There are four categories of distinctiveness—in ascending order: generic, descriptive, suggestive, and

[14]

arbitrary or fanciful.  Judge Friendly famously elucidated these categories in *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4 (2d Cir. 1976).  A generic mark "refers . . . to the genus of which the particular product is a species." *Id.* at 9; *see also* MCCARTHY § 12:1 (noting that APPLE would be a generic mark if used on fruit from an apple tree).  A generic mark is never entitled to protection. *See Abercrombie*, 537 F.2d at 9.

On the opposite extreme, an arbitrary or fanciful mark is a word that is coined "solely for [its] use as [a] trademark[]." *Id.* at 11 n.12; MCCARTHY § 11:5.  An arbitrary mark consists of a word that has a clear meaning but which does not describe the product. *Gruner + Jahr*, 991 F.2d at 1075–76.  These types of marks are inherently distinctive and are automatically entitled to protection. *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992).  The parties do not contend that the MAJESTIC marks are either generic, or arbitrary or fanciful, and the Court accepts this position.  MAJESTIC and MAJESTIC PEARL are clearly not generic—they do not describe the genus of the product—nor are they arbitrary or fanciful.

Marks that fit within the middle two categories—suggestive and descriptive—present the most difficult problems of classification, as the difference between the two may "not [be] readily apparent." *West & Co. v. Arica Inst., Inc.*, 557 F.2d 338, 342 (2d Cir. 1977) (referring to the line between suggestive and descriptive as "the broad middle ground where most of the trademark battles are fought").  A suggestive mark "requires imagination, thought or perception to reach a conclusion as to the nature of the goods." *Abercrombie*, 537 F.2d at 11 (internal quotation marks omitted).  These marks are entitled to protection. *Id.*  A descriptive mark conveys something about the qualities, ingredients or characteristics of a product; such a mark, however, is entitled to protection only upon a showing of secondary meaning. *Gruner + Jahr*, 991 F.2d at 1076; *Abercrombie*, 537 F.2d at 10.  Secondary meaning, or "acquired distinctiveness," in turn, means

that the mark "has become distinctive of the applicant's goods in commerce." *Abercrombie*, 537 F.2d at 10. Under Section 2(f) of the Lanham Act, secondary meaning can entitle an otherwise ineligible mark to protection. 15 U.S.C. § 1052(f); *see also* 15 U.S.C. § 1125(c)(1).

As the parties recognize, the MAJESTIC marks, as used in connection with the sale of pearl beads and pearl jewelry, are either suggestive or descriptive, but the parties dispute which classification is the better fit. Perfect argues that the marks are suggestive, and hence inherently distinctive; Majestic argues that they are merely descriptive.

Whether the suggestive or descriptive category is the better fit for the MAJESTIC marks presents a reasonably close question. In arguing that the marks are descriptive, Majestic argues that the marks can be seen as laudatory of the pearls, and, therefore, that the word "majestic" describes the pearls. *See Murphy v. Provident Mut. Life Ins. Co. of Philadelphia*, 923 F.2d 923, 927 (2d Cir. 1990) (stating that laudatory marks are descriptive marks); *Malaco Leaf, AB v. Promotion in Motion, Inc.*, 287 F. Supp. 2d 355, 371 (S.D.N.Y. 2003) ("self-laudatory terms such as 'Original' and 'Famous' are usually not entitled to protection"); *Real News Project, Inc. v. Indep. World Television, Inc.*, No. 06-cv-4322, 2008 U.S. Dist. LEXIS 41457, at *35–36 (S.D.N.Y. May 27, 2008).

The law in the Second Circuit is not, however, entirely consistent on this point: Self-laudatory terms have also been found suggestive and entitled to protection without a showing of secondary meaning. *See Plus Prods. v. Plus Disc. Foods, Inc.*, 722 F.2d 999, 1005 (2d Cir. 1983) (finding PLUS to be suggestive of "additional quantity or quality"); *Estee Lauder, Inc. v. The Gap, Inc.*, 108 F.3d 1503, 1509 (2d Cir. 1997) (finding the mark "100%" suggestive when used on skin cream); *First Jewellery Co. of Canada, Inc. v. Internet Shopping Network LLC*, No. 99-cv-11239, 2000 U.S. Dist. LEXIS 794, at *12–13 (S.D.N.Y. Feb. 1, 2000) (citing *Estee*

[16]

*Lauder* for the proposition that laudatory marks, such as FIRST, are suggestive in the Second Circuit).  Given the competing strands within in the case law on this point, the fact that MAJESTIC may be viewed as a laudatory mark does not firmly resolve the question whether it is a distinctive mark.

Of more assistance is the concept of descriptiveness as defined in the case law.  The defining feature of a descriptive mark is that it gives the consumer an immediate idea of the contents of the product.  *See Stix Prods., Inc. v. United Merchs. & Mfrs., Inc.*, 295 F. Supp. 479, 488 (S.D.N.Y. 1968).  Illustrative examples of descriptive marks are:  P.M. for sleep-aid medication, POWER CHECK for batteries that enable one to check the remaining power level, and REAL NEWS for news reporting.  *See Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.*, 973 F.2d 1033, 1040 (2d Cir. 1992); *Ideal World Mktg., Inc. v. Duracell, Inc.*, 15 F. Supp. 2d 239, 244 (E.D.N.Y. 1998), *aff'd*, 182 F.3d 900 (2d Cir. 1999); *Real News Project*, 2008 U.S. Dist. LEXIS 41457, at *35–36.

In the Court's view, the word MAJESTIC does not convey the qualities of the subject pearls with the immediacy normally associated with a purely descriptive mark.  Instead, the MAJESTIC marks, without more, leave the consumer to consult his or her imagination to determine what the pearls are like.  At most, a customer could infer, from the regal connotations of the word "majestic," that the pearls are viewed as having high quality.  A customer might also draw the related conclusion that the wearer of such a pearl would convey a regal or high-quality impression while wearing them.  Even assuming that this inference is a fair one from the word "majestic," the MAJESTIC marks thus only "*suggest*[] the product" but still require "imagination to grasp the nature of the product."  *Estee Lauder*, 108 F. 3d at 1509 (emphasis added).  Because the test of suggestiveness in the Second Circuit depends, ultimately, on the

[17]

degree of imagination needed by the consumer upon seeing the mark, application of this

fundamental test supports a finding that the MAJESTIC marks are suggestive.  *See Genesee*

*Brewing Co., Inc. v. Stroh Brewing Co.*, 124 F.3d 137, 143 (2d Cir. 1997).

      In its decisions on this point, the Second Circuit has also considered whether a finding

that a mark is inherently distinctive will make it difficult for manufacturers of similar products to

market their goods.  *See, e.g.*, *Abercrombie*, 537 F. 2d at 11 (citing *Aluminum Fabricating Co. of*

*Pittsburgh v. Season-All Window Corp.*, 259 F.2d 314, 317 (2d Cir. 1958)); *see also* MCCARTHY

§ 11:18 (noting that the rationale for denying protection of merely descriptive terms is based, in

part, on the need to prevent one manufacturer from having a monopoly of descriptive

terminology).  That is not so here.  MAJESTIC is not so elemental or necessary to describe

products in this area that it must be left unprotected.  The Court therefore finds that the

MAJESTIC marks are suggestive as applied to pearls and pearl jewelry.

      b.  *Prior PTO Finding*

      Although the Court has determined that the marks in question are suggestive, the Court

notes that this finding accords with the PTO's earlier determination that the MAJESTIC marks

are inherently distinctive when applied to pearls.  Notably, when Majestic applied to the PTO in

2000 to place the MAJESTIC mark in the Principal Register, it did not make a claim under

Section 2(f) of the Lanham Act of acquired distinctiveness.  *See* Tufariello Support Aff. Ex. 4.

Consistent with Majestic's application, the PTO determined that the MAJESTIC mark did not

warrant a showing of acquired distinctiveness.  Instead, it determined that the mark was

inherently distinctive and entitled to be published on the Principal Register.  *Id.*

      Prior findings by the PTO, although not binding, are given a substantial degree of

deference in this Circuit.  *See Murphy Door Bed Co. v. Interior Sleep Sys., Inc.*, 874 F.2d 95, 101

[18]

(2d Cir. 1989) (citing *Syntex Labs., Inc. v. Norwich Pharmacal Co.*, 437 F.2d 566, 569 (2d Cir.

1971)) (reaffirming the Second Circuit rule that PTO decisions are to be accorded "great

weight"); *see also* MCCARTHY § 23:84.  Where the evidence is in equipoise as among multiple

categories of distinctiveness, a prior finding by the PTO may properly be used to tip the scales.

*See Aluminum Fabricating Co.*, 259 F.2d at 316 (stating that, where there was equal evidence

that a mark could be either descriptive or arbitrary and fanciful, the PTO's decision on that issue

should be upheld).  Therefore, the PTO's determination that the MAJESTIC mark, as applied to

pearls, is inherently distinctive provides additional support for the Court's finding here.

      c.  *Judicial Estoppel*

Finally, Perfect raises a claim of judicial estoppel against Majestic on the issue of

distinctiveness.  Reviewing Majestic's submissions before the PTO, Perfect notes that, when

Majestic applied to register the MAJESTIC mark with the PTO, Majestic implicitly took the

position that the mark was inherently distinctive.  Perfect argues that Majestic should be

estopped from arguing here that the same mark is merely descriptive.

A party that applies for trademark registration does not necessarily express in words its

position as to whether a mark is suggestive, but may nonetheless convey that point through the

process it pursues to attain registration of the mark.[8]  An applicant can seek registration on the

Principal Register either by claiming eligibility under Section 2(e) of the Lanham Act, which

covers inherently distinctive marks, or by making a claim of acquired distinctiveness of a

descriptive mark under Section 2(f) of the Lanham Act.  *See* MCCARTHY § 19:11.  In the latter

situation, the applicant must "make an explicit claim of distinctiveness under 2(f)" in order to be

---

[8] Counsel for Majestic represented at argument that Majestic had not taken a position as to the
mark's inherent distinctiveness when it applied to register it.  That is, literally, true.  However, as
explained in the text, Majestic's overall application clearly conveyed the view that the mark was
inherently distinctive.

[19]

considered for the Principal Register. *Id.* Notably, when Majestic applied to register the MAJESTIC mark in 2000, it did not make any such claim of acquired distinctiveness under Section 2(f). Tufariello Support Aff. Ex. 4. The notes of the PTO examining attorney, Dana Newton, confirm that there no claim of acquired distinctiveness was made under 2(f); the notes further reflect that she did not reject the application on the ground that it required a showing of secondary meaning under 2(f). *Id.* Majestic's implicit position in front of the PTO, therefore, is fairly read to be that the Majestic mark is inherently distinctive.

Notwithstanding this, in general, courts do not bind parties to their statements made or positions taken in ex parte application proceedings in front of the PTO. *See, e.g.*, *Polo Fashions, Inc. v. Extra Special Prods., Inc.*, 451 F. Supp. 555, 561 (S.D.N.Y. 1978); *Watercare Corp. v. Midwesco-Enterprise, Inc.*, 171 U.S.P.Q. 696, 700 (T.T.A.B. 1971); *see also* MCCARTHY § 32:111. Accordingly, a claim by the defendant in an infringement action that a mark is merely descriptive when it had previously argued to the PTO that the mark was suggestive does not, in the ordinary case, carry much weight with a court. *See, e.g.*, *Attrezzi, LLC v. Maytag Corp.*, 436 F.3d 32, 38 (1st Cir. 2006). The position a party takes as to distinctiveness when seeking to register its mark with the PTO may have a sound strategic basis. *See* MCCARTHY § 19:11 (encouraging applicants to assert that their trademark is inherently distinctive and not to concede that it is merely descriptive).[9] In light of this, the Court is not persuaded that it needs to bind Majestic to the position it implicitly took in front of the PTO more than a decade ago.

Perfect relies on *Feathercombs, Inc. v. Solo Products Corp.*, 306 F.2d 251, 256 (2d Cir. 1962), for the proposition that a party which takes a position on the issue of distinctiveness in an

---

[9] Consistent with this, Majestic explained at argument that applicants typically do not take a position as to distinctiveness and, instead, leave it to the PTO Examining Attorney to make that determination.

[20]

application to the PTO cannot change its position in a later infringement litigation.  But *Feathercombs* is not necessarily controlling where the adverse party's prior position was taken in an application before the PTO, not in a controverted proceeding.  *See Jewish Sephardic Yellow Pages, Ltd. v. DAG Media, Inc.*, 478 F. Supp. 2d 340, 352–55 (E.D.N.Y. 2006) (distinguishing *Feathercombs* from a case in which the defendant took a different position on distinctiveness when defending itself in an infringement action than it had when it applied to the PTO to register the mark at issue).  Importantly, at issue in *Feathercombs* was the fair use defense, which requires a finding of good faith.  *See* 15 U.S.C. § 1115(b)(4).  In that context, the defendant's state of mind in using the mark is a significant factor:  If the defendant believed that the mark was not protectable, then a finding of good faith in connection with its use is possible, whereas if the defendant had earlier attempted to register the mark, then it cannot claim that its use of the mark, when registered by another, was in good faith.  *Jewish Sephardic Yellow Pages*, 478 F. Supp. 2d at 353.  The defendant's state of mind is not, however, the critical inquiry here.[10]  The other authorities on which Perfect relies are also inapposite.[11]  Accordingly, although the Court finds the MAJESTIC marks suggestive, it does not do so, even in part, based on a finding of judicial estoppel.

### 3.    Likelihood of Confusion

The parties agree that there is a likelihood of confusion between their respective offerings in the market for pearl jewelry.  *See* Pl.'s Br. 10–11; Def.'s Br. 13.  The Court nevertheless

---

[10] For the same reason, *Plus Products v. Natural Organics, Inc.*, No. 81-cv-1798, 1984 U.S. Dist. LEXIS 19801, at *8 (S.D.N.Y. Feb. 3, 1984), on which Perfect also relies, is inapposite.  *See Jewish Sephardic Yellow Pages*, 478 F. Supp. 2d at 352–55.

[11] The cases cited by Perfect relating to the doctrine of "file wrapper estoppel," which binds parties in patent litigation to the statements they made in *ex parte* application proceedings in front of the PTO, are inapplicable to trademark litigation.  *See* MCCARTHY § 32:111.

examines this issue on its own, by applying the factors identified by Judge Friendly in the seminal case of *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492 (2d Cir. 1961): (1) the strength of the mark, (2) the similarity of the competing marks, (3) the proximity of the products and their competitiveness with one another, (4) the evidence that the senior user may bridge the gap and infringe on the junior user's market, (5) actual consumer confusion, (6) any evidence that the infringing mark was adopted in bad faith, (7) the quality of the products, and (8) the sophistication of consumers in the relevant market.  An examination of these factors confirms a likelihood of confusion in the area of pearl jewelry, but not as to loose pearls or pearl beads.

      a.  *Strength of the Mark*

The analysis here largely tracks the Court's earlier analysis as to protectability.  *Arrow Fastener Co., Inc. v. Stanley Works*, 59 F.3d 384, 391 (2d Cir. 1995) (internal quotation marks omitted) ("A court's inquiry regarding the strength of a mark often parallels the inquiry concerning the mark's validity inasmuch as the strength or distinctiveness of a mark determines both the ease with which it may be established as a valid trademark and the degree of protection it will be accorded.").  A suggestive mark, such as the MAJESTIC marks, is moderately strong. *See Star Indus., Inc. v. Bacardi & Co. Ltd.*, 412 F.3d 373, 385 (2d Cir. 2005).  A mark that is rendered in a stylized lettering is thereby generally considered stronger, but this is not so of Perfect's mark, which is presented using a simple font found in any word processing software. *Compare id.* (finding an orange and gold colored "O" on orange-flavored vodka stylized, but not sufficiently so to strengthen the mark), *with Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, 317 F.3d 209, 217–18 (2d Cir. 2003) (finding the mark "Patsy's" on pasta sauce strengthened because of stylized lettering and "arbitrary design elements").  The Court accordingly finds that, although

Perfect's MAJESTIC marks are inherently distinctive and entitled to some protection, they are otherwise weak.  This factor, therefore, somewhat favors Majestic.

b. *Similarity of the Marks*

Courts examine the similarity between the marks and the contexts in which they appear to assess the likelihood that consumers will be confused by the competing marks.  *See Gruner + Jahr*, 991 F.2d at 1078.  Perfect's and Majestic's marks are very similar:  Both are renditions of the word "majestic" in either block lettering or cursive.  The marks also appear in similar contexts:  Both are used on promotional material and in advertisements as well as in jewelry trade publications and, most important, both are affixed to pearls or products containing pearls.  To be sure, the marks are not identical, but this does not significantly mitigate the likelihood of confusion.  It is enough that the ordinary consumer could interpret the similar marks as indicating that the products derive from the same source.  *See Stix Prods.*, 295 F. Supp. at 493–94 (law cannot expect average consumers to make a "microscopic examination" to discern the differences between marks).  There is a sufficiently high degree of similarity between the appearance of the marks and the contexts in which they are used to cause consumers to be confused by the two marks.  This factor, therefore, strongly favors Perfect, as it is likely that Majestic, as the infringer, will confuse consumers through its use of the marks.

c. *Proximity and Competitiveness of the Marks*

This factor examines the extent to which the products compete with one another.  *See Lebewohl v. Heart Attack Grill LLC*, No. 11-cv-3153, 2012 WL 2674256, at *29 (S.D.N.Y. July 5, 2012).  Courts examine "the nature of the products themselves and the structure of the relevant market," including "the class of customers to whom the goods are sold, the manner in which the products are advertised, and the channels through which the goods are sold." *Cadbury*

*Beverages v. Cott Corp.*, 73 F.3d 474, 480 (2d Cir. 1996) (citing *Vitarroz v. Borden, Inc.*, 644 F.2d 960, 967 (2d Cir. 1981)).

These considerations suggest that Perfect's and Majestic's products are, for the most part, not directly competitive. Perfect sells pearl jewelry to retail stores and directly to consumers; Majestic, by contrast, mostly sells pearl beads and loose pearls, and it does so to jewelry designers and wholesalers. These are different types of products sold through different channels—Perfect sells jewelry to retail stores largely by having store representatives visit its showroom in New York and by cold-calling potential customers; Majestic, by contrast primarily sells its goods at trade shows. Thus, insofar as Majestic's pearl beads and loose pearls business is concerned, this factor favors Majestic, as it appears that its pearl bead and loose pearl products generally do not compete directly with Perfect's pearl jewelry.

However, with respect to Majestic's pearl jewelry business, which Majestic has represented constitutes approximately 5% of its business, the parties' pearl jewelry products are in direct competition. Having two companies selling pearl jewelry in a national market using effectively the same or highly similar marks presents a high potential for confusion. For this reason, insofar as Majestic's pearl jewelry business is concerned, this factor strongly favors Perfect.

        d.  *Bridging the Gap*

This factor asks if the senior user plans to encroach on the junior user's market in the future. *See Polaroid*, 287 F.2d at 495. The parties are already in direct competition as to pearl jewelry, but as to the remaining areas of Majestic's business, counsel for Perfect represented at argument that it has no plans to enter the wholesale pearl bead market. Therefore, this factor does not enhance the likelihood of confusion. The Court notes that Majestic, the junior user, has

represented that it plans to expand its jewelry business.  Were such expansion of Majestic's jewelry business to occur, with Majestic unrestrained in its ability to use the MAJESTIC marks, it would undoubtedly increase the existing likelihood of confusion in the future between the parties' pearl jewelry products.

      e. *Actual Consumer Confusion*

The most powerful evidence bearing on a likelihood of confusion in this case comes from the multiple instances of actual, documented consumer confusion.  *See Virgin Enters. Ltd. v. Nawab*, 335 F.3d 141, 151 (2d Cir. 2003) ("It is self-evident that the existence of actual consumer confusion indicates a likelihood of consumer confusion.").  The record contains at least six examples of Perfect customers who mistook Majestic for Perfect when they attempted to locate the Perfect jewelry which had been advertised on QVC.  In addition, there is a recorded instance in which a party to the Filene's Basement bankruptcy contacted Majestic (instead of Perfect), even though it was Perfect, not Majestic, which had done business with Filene's Basement.

These seven solidly documented examples of proven confusion, although representing only a small percentage of buyers, nevertheless provide compelling evidence that consumers in the future will be confused as between the pearl jewelry products of Perfect and Majestic.  *See Long Tai Shing Co. Ltd. v. Koch Lowy*, No. 90-cv-4464, 1990 U.S. Dist. LEXIS 19123, at *33– 34 (S.D.N.Y. June 20, 1991) ("even if the movant shows actual confusion by only a small percentage of buyers, he may sustain his case based on the inference that a few proven instances of actual confusion betoken a more substantial likelihood of confusion").  This factor strongly favors a finding of a likelihood of confusion.

      f. *Bad Faith*

This factor inquires whether the infringing party adopted the mark in bad faith, namely, "with the intention of capitalizing on plaintiff's reputation and goodwill and any confusion between his and the senior user's product." *Lang v. Ret. Living Pub. Co.*, 949 F.2d 576, 583 (2d Cir. 1991) (internal quotation marks and citation omitted). There is no evidence of bad faith by Majestic. The parties did not know of each other's existence until 2009, years after each began using the MAJESTIC marks. There is no evidence that Majestic adopted its mark in a deliberate attempt to appropriate Perfect's intellectual property.

g. *Quality of the Products*

In evaluating this factor, courts consider the quality of the respective products—it presumes that consumers are more likely to confuse products if they are of a similar quality. *See Savin Corp. v. Savin Grp.*, 391 F.3d 439, 461 (2d Cir. 2004). Of particular concern is whether the junior user's product is of lower quality relative to the senior user's. *Id.* There is no record evidence on this point. An email in the record states that Perfect may sell "simulated" as opposed to real pearls, but this scant evidence does not generate an inference as to the quality of either party's products, or their relative quality. *See* Lo Cicero Decl. Ex. EE. Nor, given the documented instances of actual confusion, does it appear that any difference in quality that may exist between the pearls used in the parties' pearl jewelry prevent confusion from taking root.

h. *Consumer Sophistication*

This final factor examines "the general impression of the ordinary purchaser, buying under the normally prevalent conditions of the market and giving the attention such purchasers usually give in buying that class of goods." *The Sports Auth. v. Prime Hospitality Corp.*, 89 F.3d 955, 965 (2d Cir. 1996). In assessing this factor, it is noteworthy that Perfect sells jewelry to two different classes of customers—buyers for retail stores, and directly to individual consumers

through QVC. The latter group, it is safe to say, is less sophisticated than the former. In light of their experience in the jewelry and bead market, Perfect's retailer customers and Majestic's wholesale and designer customers are likely to differentiate between the two products, particularly if Majestic's pearls are "genuine" and Perfect's are "simulated." The same is not necessary true of the non-industry consumers who buy Perfect's jewelry directly from QVC, as the documented instances of actual confusion among QVC customers illustrate. This factor thus favors a finding of a likelihood of confusion.

> i.  *Balancing the Factors*

The Court's analysis of the *Polaroid* test is not meant to be mechanical. Instead, it properly "focus[es] on the ultimate question of whether, looking at the products in their totality, consumers are likely to be confused." *Star Indus.*, 412 F.3d at 384. In light of the similarity between the marks, the competitive proximity in which they are used, and, most strikingly, the documented instances of actual confusion, the Court finds that there is a likelihood of confusion if both parties were to continue using the marks in connection with the sale of pearl jewelry. The Court does not make such a finding with respect to Majestic's use of the marks in connection with other products (*e.g.,* pearl beads and loose pearls).

**4.    Conclusion**

As to the Lanham Act claims of trademark infringement and unfair competition, the Court holds that Perfect is the senior user of the MAJESTIC marks and is, therefore, entitled to priority over Majestic. The Court further holds that, because Perfect's marks are inherently distinctive, they are worthy of protection. Perfect has also discharged its burden on summary judgment to show that Majestic's use of the marks creates a likelihood of confusion sufficient to find that Majestic's use of the marks, in connection with pearl jewelry, constitutes trademark

infringement.  *See, e.g.*, *Malaco Leaf, AB*, 287 F. Supp. 2d at 377 ("Summary judgment is

granted in infringement cases where the likelihood of confusion factors weigh in the moving

party's favor."); *see also Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 876

(2d. Cir. 1986); *Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, No. 99-cv-10175, 2001 U.S. Dist.

LEXIS 1625, at *40–41 (S.D.N.Y. Feb. 21, 2001), *aff'd*, 317 F.3d 209 (2d Cir. 2003); *Consol.*

*Cigar Corp. v. Monte Cristi de Tabacos*, 58 F. Supp. 2d 188, 200 (S.D.N.Y. 1999); *Lane Capital*

*Mgmt., Inc. v. Lane Capital Mgmt., Inc.*, 15 F. Supp. 2d 389, 400 (S.D.N.Y. 1998), *aff'd*, 192

F.3d 337 (2d Cir. 1999).

        Because there is no genuine dispute as to the material facts on which this conclusion is

based, Perfect is entitled to a judgment in its favor as a matter of law.  Fed. R. Civ. P. 56(a).

Perfect's motion for summary judgment as to Count One—the claim of unfair competition and

trademark infringement in violation of 15 U.S.C. § 1125(a)—is therefore granted insofar as

applicable to Majestic's line of pearl jewelry.  Accordingly, Majestic's motion for summary

judgment on Counterclaims One and Two—claims of trademark infringement, false designation

of origin, and confusion, mistake or deception in violation of 15 U.S.C. § 1125(a)—is denied.

        This ruling is narrow in scope.  Although Perfect has established priority, and that

Majestic's continuing use of the MAJESTIC marks would cause confusion, this conclusion holds

true only as to the discrete market in which the two businesses compete—the pearl jewelry

market.  Accordingly, although Majestic will be enjoined from using the MAJESTIC marks, that

injunction will be limited to Majestic's line of pearl jewelry (which, Majestic has represented,

constitutes only 5% of its business) and will not apply to Majestic's loose pearls or pearl bead

business.

## B.  Perfect's False Advertising Claim Under the Lanham Act

[28]

Perfect alleges that Majestic is liable for false advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1), in connection with Majestic's use of the registration symbol ("®") on its promotional materials after its registration of the MAJESTIC mark had lapsed.  To prevail on a claim of false advertising under the Lanham Act, a claimant must show either that the challenged advertisement is literally false or, alternatively, that, while it is not literally false, it is nonetheless likely to cause confusion among consumers.  *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 153 (2d Cir. 2007).  In the ordinary case, a claimant must also demonstrate that the advertisement "misrepresented an inherent quality or characteristic of the product."  *S.C. Johnson & Son, Inc. v. Clorox Co.*, 241 F.3d 232, 238 (2d Cir. 2001) (internal quotation marks omitted) (noting that "this requirement is essentially one of materiality").  However, "[w]here an advertising claim is literally false, 'the court may enjoin the use of the claim without reference to the advertisement's impact on the buying public.'"  *Tiffany (NJ) Inc. v. eBay, Inc.*, 600 F.3d 93, 112 (2d Cir. 2010) (quoting *McNeil-P.C.C., Inc. v. Bristol-Myers Squibb Co.*, 938 F.2d 1544, 1549 (2d Cir. 1991)).  The Lanham Act does not require that the claimant demonstrate any particular intent on the part of the defendant.  *See, e.g.*, *John P. Villano, Inc. v. CBS, Inc.*, 176 F.R.D. 130, 131 (S.D.N.Y. 1997).

Here, Perfect claims that Majestic continued to use the ® on promotional materials after, in 2008, its registration of the MAJESTIC mark had lapsed, and that Majestic is, therefore, liable for false advertising.  Majestic distributes promotional materials including shopping bags, tape measures, and calculators at trade shows all across the country.  *See* Lo Cicero Decl. Ex. X.  To the extent that these giveaways are the principal means by which Majestic promotes its product

to existing and potential customers, this activity constitutes advertising.[12]  Connie Wang of Majestic admitted at her deposition that Majestic had continued to give away materials bearing the ® after its registration had expired.  She explained that Majestic had been unaware that the registration had expired until October 2009, when it learned of that fact in the course of reviewing its trademark files after Perfect threatened to sue Majestic for trademark infringement.  C. Wang. Dep. 116–17.  Wang further testified that Majestic "stopped using [the ® symbol] immediately" after discovering that its mark was no longer current.  *Id.* at 116.  Perfect claims that Majestic's improper use of the ® symbol, whether in good or bad faith, was likely to mislead consumers into believing Majestic had a registered trademark, and that, in so doing, Majestic materially misrepresented a quality or characteristic of its product.

Based on the above facts, the Court readily concludes that Perfect has adequately proven that the advertisements are literally false:  Majestic's promotional goods represented that it possessed a valid trademark registration, at a time when that was untrue.  Perfect has not, however, adduced record evidence tending to show that the falsity at issue—the misuse of the ® symbol—played a substantial role in the decision of Majestic's customers to purchase Majestic's product.  As noted, however, an injunction may be entered without "reference to the advertisement's impact on the buying public" where, as here, the evidence has demonstrated that the advertisement is literally false.  *See, e.g.*, *Tiffany (NJ) Inc.*, 600 F.3d at 112.

In this claim, Perfect seeks only injunctive relief.  It does not claim to have suffered monetary harm, and does not seek money damages, from Majestic's misuse of the ® symbol.  Accordingly, because Perfect has indisputably demonstrated that Majestic engaged in advertising

---

[12] An "advertisement" is "the calling of general attention to something, public notification; (now esp.) the promotion of goods and services through a public medium."  OXFORD ENGLISH DICTIONARY (2d ed. 2012).

that is literally false, the Court will grant summary judgment to Perfect on this claim, and enter

an injunction prohibiting Majestic from misusing the ® symbol in connection with the

MAJESTIC marks on any product.

**C.  Majestic's Trademark Dilution Claim Under the Lanham Act**

For its part, Majestic alleges that Perfect is liable for trademark dilution in violation of 15

U.S.C. § 1125(c).  This section of the Lanham Acts provides that one who uses a mark in

commerce that is likely to dilute the distinctiveness of a "famous mark," either through

"blurring" or "tarnishment" must be enjoined from further use of the mark.  § 1125(c)(1).

Because the Court has determined on the trademark infringement claims that Perfect has the right

to the MAJESTIC marks, this claim is moot.  As a matter of law, Majestic is not entitled to

recover for trademark dilution.

In any event, even if Majestic had an exclusive right to the MAJESTIC marks, based on

the evidence in the record, it could not prevail on a claim for trademark dilution.  A "famous

mark" as defined in § 1125(c)(2)(A) is one which is "widely recognized by the general

consuming public of the United States."  15 U.S.C. § 1125(c)(2)(A); *see Starbucks Corp. v.

Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 105 (2d Cir. 2009) (noting that "the requirement that

the mark be 'famous' and 'distinctive' significantly limits the pool of marks that may receive

dilution protection").  There is no evidence before the Court to support a finding that the

MAJESTIC marks, as used by Majestic, are sufficiently known by the general purchasing public,

beyond perhaps in the niche market of pearl bead buyers.  Majestic's motion for summary

judgment on this claim is, therefore, denied and Perfect's cross-motion is granted.

**D.  New York State Law Claims**

**1.     Perfect's and Majestic's Claims of Trademark Infringement and Unfair**

Competition

Both parties bring claims of trademark infringement and unfair competition under New York common law.[13]  In general, the New York common law causes of action of infringement and unfair competition "mirror the Lanham Act claims."  *Lorillard Tobacco Co. v. Jamelis Grocery, Inc.*, 378 F. Supp. 2d 448, 456 (S.D.N.Y. 2005) (internal quotation marks omitted).  A claim of trademark infringement under New York common law requires that the claimant demonstrate a likelihood of confusion as to the source of the defendant's products, just as it must under the Lanham Act.  *See Standard & Poor's Corp. v. Commodity Exch., Inc.*, 683 F.2d 704, 708 (2d Cir. 1982).  In light of the Court's above analysis as to the Lanham Act claims, Perfect has proven the elements of trademark infringement under New York common law, and is entitled to summary judgment on this claim to the same extent as under the Lanham Act, *i.e.*, as to Majestic's pearl jewelry line of business, but not as to its loose pearl and pearl bead lines of business.  Majestic's cross-motion on this point is denied.

The federal and state standards diverge, however, as to unfair competition.  Unlike its federal counterpart, a claim of unfair competition under New York law demands a showing of bad faith by the infringing party.  *Lorillard*, 378 F. Supp. 2d at 456 (citing *Nadel v. Play-By-Play Toys & Novelties, Inc.*, 208 F.3d 368, 383 (2d Cir. 2000)).  Neither party has established bad faith on the other's part, in connection with the use of the MAJESTIC marks.  Both parties'

---

[13] The parties' pleadings do not use uniform labels for these causes of action, but both Perfect's Amended Complaint and Majestic's Verified Amended Answer allege that, under New York law, the other infringed a valid trademark, and that such conduct constitutes unfair competition. *See* Dkt. 43 (Perfect's Amended Complaint) ¶ 42 ("defendant has committed trademark infringement and unfair competition under the common law of this State"); Dkt. 94 (Majestic's Verified Amended Answer) ¶ 121 (alleging Perfect's conduct is "in violation of New York State Common Law, New York State Trademark Law, and/or New York State law of unfair competition").

motions for summary judgment in their favor on their New York law unfair competition claims

are, therefore, denied.  However, Perfect's motion, insofar as it seeks judgment *against*

Majestic's counterclaim of unfair competition, is granted.  Majestic has not made a mirror-image

motion seeking judgment against Perfect's claim of unfair competition.  However, it appears

clear, given that Perfect has not adduced any evidence of bad faith on Majestic's part, that that

claim must fail.  Perfect is ordered to show cause, within 10 days of the date of this Opinion and

Order, why the Court should not grant judgment in Majestic's favor on Perfect's claim of unfair

competition under New York law.  *See* Fed. R. Civ. P. 56(f).[14]

### 2.    Perfect's Claim of False Advertising

Perfect also brings a claim of false advertising pursuant to N.Y.G.B.L. § 350,[15] based on

Majestic's use of the ® symbol after its registration had lapsed.   This claim is unavailing.  "The

goals of GBL §§ 349-350 were major assaults upon fraud against consumers, particularly the

disadvantaged . . . not adventitious intervention in commercial or trade identification cases

brought by one business against another."  *Diller v. Steurken*, 712 N.Y.S.2d 311, 314 (Sup. Ct.

N.Y. Cnty. 2000) (internal quotation marks and additional citation omitted).  Accordingly,

"[c]ourts routinely reject such attempts to fashion Section 349 and 350 claims from garden

variety disputes between competitors."  *Edward B. Beharry & Co. v. Bedessee Imps., Inc.*, No.

---

[14] Because Majestic has not affirmatively moved for summary judgment against Perfect's unfair competition claim—instead only opposing Perfect's motion for summary judgment—judgment is not properly entered in Majestic's favor on this claim, without affording Perfect an opportunity to oppose entry of judgment for Majestic.  *Compare* Perfect's Notice of Motion (Dkt. 54) (moving for summary judgment on its own claims, against Majestic's counterclaims, and against Majestic's affirmative defenses) *with* Majestic's Notice of Motion (Dkt. 52) (seeking summary judgment only *for* its own counterclaims, not *against* all of Perfect's claims).

[15] Perfect's Amended Complaint pleads false advertising under New York law but does not specify a particular statute.  N.Y.G.B.L. § 350 is the statute in New York State that encompasses claims of false advertising; the Court infers that Perfect sues under this statute.

09-cv-077, 2010 U.S. Dist. LEXIS 27404, at *25 (E.D.N.Y. Mar. 23, 2010) (brackets in original) (citing *Winner Int'l v. Kryptonite Corp.*, No. 95-cv-247, 1996 U.S. Dist. LEXIS 2182, at *7 (S.D.N.Y. Feb. 27, 1996) (internal quotation marks omitted)).  Thus, where, as here, "[t]he gravamen of plaintiff's complaint is alleged harm to its business interests[, and] not a cognizable harm to the public interest," no § 350 claim will lie.  *Edward B. Beharry & Co.*, 2010 U.S. Dist. LEXIS 27404, at *24.  Although Perfect is correct that Majestic erred in continuing to use the ® symbol after its registration had lapsed, it has not adduced any evidence that the public interest was harmed by this inadvertent error.

Moreover, "courts have held that trademark cases fall outside the scope of [] New York's consumer protection statute, reasoning that the public harm that results from trademark infringement is 'too insubstantial to satisfy the pleading requirements of § 349[,]'" a closely analogous provision.  *Zip Int'l Grp., LLC v. Trilini Imps., Inc.*, No. 09-cv-2437, 2011 U.S. Dist. LEXIS 55270, at *28 n.10 (E.D.N.Y. May 24, 2011) (citing *Karam Prasad, LLC v. Cache, Inc.*, No. 07-cv-5785, 2007 U.S. Dist. LEXIS 63052, at *4–5 (S.D.N.Y. Aug. 27, 2007) (quoting *Tommy Hilfiger Licensing, Inc. v. Nature Labs, LLC*, 221 F. Supp. 2d 410, 413 n.2 (S.D.N.Y. 2002) (collecting cases))).  Perfect's motion as to this claim is therefore denied, and, because it has failed to (and cannot) point to any set of facts that would make this claim cognizable, it is dismissed.

### 3.    Majestic's Claim Under N.Y.G.B.L. § 133

Majestic alleges that Perfect's use of the MAJESTIC marks is likely to deceive the public by insinuating that Perfect's products are associated with Majestic.  N.Y.G.B.L. § 133 prohibits the use of a trade name that may deceive the public as to the real identity of a person, firm, or corporation.  An indispensable element of a claim alleged under § 133 is "intent to deceive the

public." *In re Houbigant, Inc.*, 914 F. Supp. 964, 984 (S.D.N.Y. 1995) (citing *Specialty Box & Packaging Co. v. Tobin Howe Specialty Co.*, 59 A.D.2d 961, 962 (3d Dep't 1977)).

There is no evidence in the record, however, to suggest that Perfect used either the MAJESTIC marks or the trade name Majestic Pearl in bad faith or with an intent to deceive the public. Rather as noted, it is clear that Perfect began using the marks and the trade name long before Majestic was formed; and that after Majestic was formed, it and Perfect coexisted for more than a decade without being aware of each other's existence. No reasonable jury could find Perfect liable under § 133. Accordingly, Majestic's motion for summary judgment on this point is denied and Perfect's cross-motion is granted.

### 4.   Majestic's Claim Under N.Y.G.B.L. § 349

Majestic claims that Perfect's use of the MAJESTIC marks is a deceptive business practice in violation of N.Y.G.B.L. § 349, because it misrepresents Perfect's products as being associated with Majestic. To state a claim for deceptive business practices under § 349, Majestic must prove both that Perfect engaged in a practice which was misleading in a material respect and that Majestic was harmed as a result. *Ortho Pharm. Corp. v. Cosprophar, Inc.*, 32 F.3d 690, 697 (2d Cir. 1994) (citations omitted).

This claim, too, fails, There is no evidence in the record that Perfect used the marks in a materially misleading way, or that Majestic was, in fact, harmed by Perfect's use. Further, as noted *supra* in the context of Perfect's N.Y.G.B.L. § 350 claim, the prevailing view in the Second Circuit is that "trademark . . . infringement claim[s] are not cognizable under [§349] unless there is specific and substantial injury to the public interest over and above the ordinary trademark infringement." *MyPlayCity, Inc. v. Conduit Ltd.*, No. 10-cv-1615, 2012 U.S. Dist. LEXIS 47313, at *44 (S.D.N.Y. Mar. 30, 2012). Majestic has failed to make this showing. Its

motion for summary judgment on this claim is denied and Perfect's cross-motion is granted.

### 5.  Majestic's Claim Under N.Y.G.B.L. § 360-l

Majestic also claims trademark and business reputation dilution in violation of N.Y.G.B.L. § 360-l.  "A cause of action for trademark dilution [under § 360-l] is meant to cover those situations where the public knows that the defendant is not connected to or sponsored by the plaintiff, but the ability of [the plaintiff's] mark to serve as a unique identifier of the plaintiff's goods or services is weakened because the relevant public now also associates that designation with a new and different source."  *Sports Auth.*, 89 F.3d at 965–66 (internal quotation marks and citation omitted).[16]  "In order to establish a dilution claim, two elements must be shown: (1) ownership of a distinctive mark, and (2) a likelihood of dilution."  *Hormel Foods Corp. v. Jim Henson Prods.*, 73 F.3d 497, 506 (2d Cir. 1996); *see also Ritani, LLC v. Aghjayan*, No. 11-cv-8928, 2012 U.S. Dist. LEXIS 102078, at *55 (S.D.N.Y. July 20, 2012); *Karam Prasad, LLC v. Cache, Inc.*, No. 07-cv-5785, 2007 U.S. Dist. LEXIS 63052, at *7 (S.D.N.Y. Aug. 27, 2007).

Here, Majestic has failed to show ownership of the MAJESTIC marks; rather, Perfect is the senior user entitled to use the marks where the two are in conflict.  And, as the Second Circuit made clear in *Sports Authority*, § 360-l applies only where the mark identifying the "*plaintiff's* goods or services is weakened because the relevant public now also associates that designation with a new and different source."  *Sports Authority*, 89 F.3d at 966 (emphasis added).  Here, Perfect, the counterclaim *defendant*, is the senior user; thus, only Majestic could be the "new and different" industry participant.  Accordingly, § 360-l is not available to assist Majestic, the junior user.  Summary judgment against this claim is, therefore, granted to Perfect.

---

[16] The Second Circuit in *Sports Authority* addressed its discussion to N.Y.G.B.L. § 368-d, the predecessor to today's § 360-l.  The former § 368-d is worded identically to the present § 360-l.

### 6.      Majestic's Claim of Unjust Enrichment

Finally, Majestic claims that Perfect has been unjustly enriched through its use of the MAJESTIC marks.  The elements of unjust enrichment under New York law are: "(1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover."  *Briarpatch, Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004) (citing *Clark v. Daby*, 300 A.D.2d 732, 732 (3d Dep't 2002)).  Perfect, however, is entitled to use the marks.  It therefore cannot be found to have been unjustly enriched by profiting from their use.  Majestic's motion for summary judgment on this claim is denied and Perfect's cross-motion against it is granted.

## E.  Majestic's Affirmative Defenses

Majestic raises five affirmative defenses to Perfect's claims: (1) Perfect fails to state a claim upon which relief can be granted, (2) estoppel, (3) laches, (4) unclean hands, and (5) waiver.  Majestic has, however, completely failed to brief these defenses, save for laches, which is discussed below.  Notwithstanding that failing, Majestic moves for summary judgment on these claims.  Def.'s Br. 7 ("Majestic Pearl has clearly demonstrated the absence of genuine issues of material fact on every relevant issue raised by the pleadings, including any and all affirmative defenses."); Perfect makes a mirror-image motion for summary judgment on these defenses.  Pl.'s Br. 19–20.

As an initial matter, Majestic's defenses are properly treated as abandoned.  *See, e.g.*, *Fortress Bible Church v. Feiner*, 734 F. Supp. 2d 409, 519 (S.D.N.Y. 2010).  In the interest of completeness, the Court briefly addresses them.

### 1.      Failure to State a Claim Upon Which Relief Can Be Granted

Majestic alleges that Perfect fails to state a claim upon which relief can be granted, under

Fed. R. Civ. P. 12(b)(6).  In fact, as discussed, Perfect has not only stated a claim, but adduced evidence sufficient to result in the granting of summary judgment in its favor, on its federal and state claims of trademark infringement and its federal claim of unfair competition.

### 2.    Estoppel

Because Majestic has not briefed this issue, it is not at all clear what the basis is for its claim of estoppel.  Majestic merely states, in conclusory fashion, that "Plaintiff's claims are barred by the Doctrine of Estoppel."  *See* Verified Amended Answer ¶ 48; *Telectronics Proprietary, Ltd. v. Medtronic, Inc.*, 687 F. Supp. 832, 841 (S.D.N.Y. 1988) (striking estoppel defense on the ground that "the word 'estoppel' without more is not a sufficient statement of a defense").  There is no evidence of which the Court is aware that would support a defense of estoppel.

### 3.    Laches and Waiver

The Court addresses the affirmative defenses of laches and waiver in tandem.  As to each, Majestic claims that Perfect unduly delayed in asserting its right to the MAJESTIC marks.  The Court addresses at the same time Perfect's motion to strike the portion of Majestic's reply brief (Dkt. 88) addressing Majestic's laches defense, in which Perfect argued that arguments raised for the first time in a reply brief are not properly considered.  *See Johnson & Johnson v. Guidant Corp.*, 525 F. Supp. 2d 336, 359 (S.D.N.Y. 2007).

To establish a defense of laches to a Lanham Act action, the defendant must establish that: (1) plaintiff knew of defendant's use of the marks, (2) plaintiff inexcusably delayed in taking action with respect to this use, and (3) defendant will be prejudiced by permitting plaintiff to assert its rights at this time.  *Saratoga Vichy Spring Co. v. Lehman*, 625 F.2d 1037, 1040 (2d Cir. 1980).  Here, the evidence shows Perfect first became aware of Majestic's use of the

MAJESTIC marks in or about October 2009, after the instances of actual confusion came to light, and that Perfect filed this lawsuit on May 14, 2010, after a lengthy exchange with Majestic's then-counsel.  *See* Lo Cicero Decl. Exs. Z & AA.

The relevant statute of limitations has been held to be six years.  *See, e.g.*, *Conopco v. Campbell Soup Co.*, 95 F.3d 187, 191 (2d Cir. 1996) ("virtually every district court in this Circuit that has addressed the question" has determined that the Lanham Act, lacking a statute of limitations of its own, is subject to a six-year statute of limitations under N.Y.C.P.L.R. § 213(8)).  Perfect filed suit well within the statute of limitations—indeed, it appears, less than a year after it became aware of Majestic's use of the marks.  The burden is therefore on Majestic to show prejudice from the delay.  *Id.*  Majestic has not done so at all.  And, from the time Perfect reached out to Majestic to attempt to resolve their differences out of court, Majestic was on notice of the possibility of a lawsuit.

Majestic attempts to avoid this result by claiming that Perfect had "constructive notice" of Majestic's use of the marks by virtue of Majestic's registration of the mark in 2000.  Majestic is correct that "a plaintiff may be barred when the defendant's conduct has been open and no adequate justification for ignorance is offered."  *Chandon Champagne Corp. v. San Marino Wine Corp.*, 335 F.2d 531, 535 (2d Cir. 1964).[17]  But knowledge is imputed to a party of another's use of the marks only where "the facts already known to him were such as to put upon a man of ordinary intelligence the duty of inquiry."  *Johnston v. Standard Mining Co.*, 148 U.S. 360, 370 (1893); *see also Polaroid Corp. v. Polarad Elecs. Corp.*, 182 F. Supp. 350, 355 (E.D.N.Y. 1960), *aff'd*, 287 F.2d 492 (2d Cir. 1961) (applying *Johnston* standard to trademark cases).  Here,

---

[17] Majestic relies on *Chandon*, but it is inapposite.  The plaintiff there had constructive notice based on its search of existing registered marks in connection with its own attempt to register the mark at issue.

Perfect was, before 2009, unaware of Majestic's existence, and its use of the marks long predated Majestic's founding, and Majestic fails to explain what facts known to Perfect purportedly gave rise to a duty to inquire as to Majestic's use of the marks. The doctrine of constructive knowledge does not apply here.

Finally, Majestic claims that Perfect knew about Majestic as of December 2007 when Perfect set about finding a name for its website. Majestic points to the testimony of Perfect's Mark Wachs, to the effect that Perfect searched a database of potential domain names for different iterations of "Majestic [and] some other adjective." Wachs Dep. 236. From this testimony, Majestic posits that Perfect "must have been made aware" of Majestic's website, www.majesticpearl.com, and, thus, of Majestic's use of the marks. *See* Def.'s Reply 6. But this is sheer speculation; no percipient witness testified that Perfect came upon Majestic. *See Jeffreys v. City of N.Y.*, 426 F.3d 549, 554 (2d Cir. 2005) (finding that a non-movant may not rely on "unsubstantiated speculation"). Accordingly, Majestic's motion for summary judgment as to its defense of laches is denied, and Perfect's cross-motion is granted. Perfect's motion to strike Majestic's reply brief argument as to this defense is denied as moot.

### 4.    Unclean Hands

The doctrine of unclean hands allows a court to deny relief to a party which has entered litigation in bad faith. *See Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240, 243 (1933). The burden of proof on this claim rests with the party invoking the defense. *Gidatex, S.r.L. v. Campaniello Imps., Ltd.*, 82 F. Supp. 2d 126, 130 (S.D.N.Y. 1999) (citing 4 RUDOLPH CALLMAN, THE LAW OF UNFAIR COMPETITION, TRADEMARKS AND MONOPOLIES § 22.18 (4th ed. 1997)). There is no evidence in the record to support a claim here that Perfect initiated this litigation in bad faith.

[40]

**CONCLUSION**

For the foregoing reasons, Perfect's motion for summary judgment is granted in substantial part, but also denied in part, and Majestic's cross-motion for summary judgment is denied in its entirety.  Specifically:

1. Perfect's motion is GRANTED as to (1) Perfect's Lanham Act claim of trademark infringement and unfair competition, insofar as applicable to Majestic's line of pearl jewelry; (2) Perfect's Lanham Act claim of false advertising relating to misuse of the ®; (3) Perfect's claim of trademark infringement under New York law, also only as to Majestic's line of pearl jewelry; (4) Majestic's counterclaims under the Lanham Act; (5) Majestic's counterclaims arising under New York's General Business Law; and (6) Majestic's counterclaims of unfair competition, infringement, and unjust enrichment under New York common law.

2. Perfect's motion is also GRANTED as to Majestic's affirmative defenses of (1) failure to state a claim upon which relief can be granted; (2) estoppel; (3) laches and waiver; and (4) unclean hands.

3. Perfect's motion for summary judgment on its claim of false advertising under New York law, however, is DENIED, and this claim is DISMISSED, because N.Y.G.B.L. § 350 does not apply to trademark disputes between competitors.

4. Perfect's motion for summary judgment on its claim of unfair competition under New York law is also DENIED and Perfect is ORDERED to show cause, by August 24, 2012, why judgment should not be entered for Majestic on this claim.

5. Majestic's motion for summary judgment in its favor is DENIED in its entirety.

6. Perfect's motion to strike a portion of Majestic's reply brief is DENIED as moot.

The Clerk of Court is directed to terminate the motions for summary judgment at docket numbers 52 and 54 and the motion to strike at docket number 90.

The parties are directed to meet and confer and submit to the Court, no later than August 27, 2012, a joint letter proposing a schedule to resolve the outstanding issues of damages, if any, including the scope of an injunction to implement the Court's conclusion that Majestic may not use the MAJESTIC and MAJESTIC PEARL marks on its line of pearl jewelry.


SO ORDERED.

Paul A. Engelmayer
United States District Judge


Dated: August 14, 2012
       New York, New York

[42]